## Aurentz *versus* Porter.

1. In an action of ejectment for specific performance, the plaintiff had a verdict and paid the purchase-money in *gold* into court, to be taken out by the defendant on his filing a deed. The prothonotary deposited the money with reliable bankers to his own credit. They employed the money as other deposits, without profit as coin; it was always subject to the prothonotary's draft. The defendant filed his deed after the passage of the Legal-Tender Law, and the prothonotary offered to pay him the money in court in legal tenders, which he refused, and brought trover for the gold. *Held*, that he could not recover.

2. In trover the plaintiff must show a right of property, a right to its immediate possession and that the defendant had converted it to his own use.

3. Where there is no rule that money paid into court should be deposited anywhere to the credit of the court, it is the duty of the prothonotary to take it into his own custody and keep it safely.

4. The prothonotary was an involuntary depositary, whose duty it is to take that care of a deposit which prudent men usually exercise.

5. It was not his duty to retain in his own pocket the identical pieces of money which were paid into court.

6. The prothonotary having cared for the money as a prudent man, and being ready to pay the money when demanded, his liability was that of a debtor, and he could pay. it in legal tenders.

October 30th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Indiana county :* No. 127, to October and November Term 1866.

In the court below this was an action of trover, brought April 3d 1865, by John H. Aurentz against James R. Porter.

The facts on which the plaintiff based his cause of action, were the following :—

On the 11th of April 1859, Patrick Fenlon commenced an action of ejectment against John H. Aurentz, the plaintiff in this case, to enforce the specific execution of a contract for the sale of land to Fenlon. On the 25th of September 1860, Fenlon recovered a verdict, and paid into court in gold $1908, the purchase-money of the land. James R. Porter, the defendant, was prothonotary at the time, and received the money.

On the 17th of October, Porter deposited " $1900 in coin" to his private account with the banking-house of Sutton & Stewart, who were bankers of credit and responsibility in Indiana, he having then other deposits in their bank. At that time, and for a considerable time afterwards, gold was not at a premium. Porter went out of office December 1st 1860, but turned no money over to his successor in office. The money remained to the credit of Porter, and subject to his draft. The gold was not sold by the bankers ; they took it to Pittsburg to make a special deposit, but as they could not so dispose of it, they used it without making anything on it as coin.

On the 28th of March 1863, Aurentz filed a deed for the land

recovered in the suit of Fenlon, and took a rule on Porter to pay the money to him (Aurentz).

On the hearing of the rule, it was agreed by the counsel of Aurentz that the money should be considered in court in national currency.

The court made the rule absolute, and made an order that the rule should be considered complied with by payment in "the lawful money of the country."

To this decree Aurentz took a writ of error, which was quashed, on the ground that a writ of error did not lie in such case. (Aurentz *v.* Porter, 12 Wright 336.)

Aurentz then brought this action of trover for the recovery of the gold which had been paid into court.

On the trial, the defendant again paid into court $1908 in legal tender currency; which was refused by the plaintiff.

The plaintiff submitted the following points:—

1. The defendant having received the money in controversy while he was prothonotary, and without any formal order of court, on record, depositing a portion of the same in his private personal account at the banking-house of Sutton & Stewart, and failing to pass the same over to his successor in office, was such a conversion of this fund as to make him responsible in an action of trover.

2. The defendant having received the money in controversy *in gold*, in his official capacity of prothonotary, and having failed to deposit the same as prothonotary, or turn it over to his successor in office, is responsible in this action in damages for the commercial value of the gold at the time Aurentz had filed his deed in the case of Fenlon *v.* Aurentz.

The court (Buffington, P. J.) answered both points in the negative.

The judge further charged:—

"[The money at all times was subject to the order of the court, and that order would have been made at any time, if Aurentz was in a position properly and legally to ask it.] If he was not in a condition to demand it, it was his misfortune. If he was, or could place himself in that condition, and by negligence or perversity failed to do so, it was his fault. Suppose, however, he was nowise to blame. Who or what is the cause of this loss? Not the prothonotary, for he neither used the money nor lost it, nor was he careless of its custody. It is simply the alteration in the nature and value of the lawful money, caused by the laws of currency, and the Act of Congress making paper a legal tender. This is the true cause, and the legal maxim thus applies—that the act of the law injures no one. Parties must submit to the consequences resulting from such alteration.      *      *      *      *

"This being an action of trover, it must be proved: 1st, that

[Aurentz v. Porter.]

the plaintiff owned the property or money—this is not contro-
verted in the present case; 2d, that the defendant converted it
to his own use—this is one of the points made. He certainly did
not spend it, nor use it in any way, and never refused to pay it
in lawful money when called upon. There was, therefore, no
actual conversion.

" But it is said that the deposit in his own name was in law a
conversion. If so, it must be sheerly technical. Everything
being fair and bonâ fide, we do not think that the mere circum-
stance that the deposit was made in his own name, when no attempt
was made to convert it to his own use, would be such a conversion
as would make him liable, when he offered to pay promptly, and
did pay when properly required to do so.

" But suppose it was a technical conversion, what would be the
result ? It would make Porter personally liable in the event of
loss. But the extent of his liability, or measure of damage,
would be the amount of the money Porter would be bound to pay
and Aurentz be entitled to receive; and this liability on part of
Porter could be discharged by payment in the lawful money of
the country, as it is now well settled that a liability to pay in
gold is discharged by payment or tender of legal tender notes.
This he did when required, and brought the money into court,
according to the agreement of the counsel on the return of the
rule.

" [We are, therefore, of opinion if the jury believe this evi-
dence, that the plaintiff has failed to make out a case to charge
the defendant with the value of gold when required to pay, and
has failed to make out a cause of action against the defendant."]

The verdict was for the defendant.

The plaintiff removed the case into the Supreme Court.

The errors there assigned were the answers of the court to his
points, and those parts of the charge which are included in
brackets.

*H. White*, for plaintiff in error, cited Kneaston *v.* Moor, Cro.
Car. 89 ; Aurentz *v.* Porter, 12 Wright 336 ; Allegheny Bank's
Appeal, Id. 330 ; Decker's Appeal, 5 W. & S. 343 ; Graham *v.*
Marshall, 2 P. F. Smith 28, 103.

*H. D. Foster*, for defendant in error.

The opinion of the court was delivered, January 7th 1868, by
STRONG, J.—The form of the action brought by the plaintiff
was trover. It was therefore incumbent upon him to show, not
only that he had a right of property in the money which had
been deposited in the defendant's hands, and a right to its imme-

diate possession, but also that the defendant had been guilty of converting it to his own use. When the deed was filed in court on the 28th of March 1863, and the court made an order that the money in court should be paid over to him, his right of property and of possession would seem to have been complete. Was there any conversion by the defendant? This is the question involved in all the assignments of error. On the 28th of September 1860 the money was paid into court in gold, and taken charge of by Porter, the defendant, who was then prothonotary. It is said there is no rule of the Common Pleas of Indiana county, directing money paid into court to be deposited anywhere to the credit of the court. It was then the duty of the prothonotary as the organ of the court, to take such money into his own custody and keep it safely. He took it accordingly, and deposited it with bankers of credit and responsibility. He deposited it in his own name. He could not have deposited it rightly to the credit of any other than himself, in the absence of any rule of court directing otherwise. He never made use of it for his private purposes. He never made any profit out of it, and immediately after the court ordered it to be paid to Aurentz the plaintiff, by agreement of counsel it was considered in court in United States legal tender notes. It is in proof that the identical money paid into court was deposited with the bankers, except the sum of $8. When the deposit was made gold was not at a premium. Legal tender notes had not then been authorized, and the deposit was used by the bankers without any profit to them. In view of this state of facts, it is plain there was no actual conversion of the money by the defendant. If there was any at all, it was merely technical, resulting from the defendant's breach of duty; and if there was no breach of duty, there was neither actual nor technical conversion. We are of opinion, that nothing in the case exhibits any such neglect of duty as can be regarded a tortious conversion of the money paid into court. When it was thus paid in, it became the official duty of the prothonotary to take charge of it. He then became an involuntary depositary, and it was his duty to take that care of the deposit which prudent men ordinarily exercise. That care was taken by placing it in the charge of reliable bankers, and the fund was ready at all times to be produced when called for. It is not to be admitted for one moment, that he was under obligation to retain in his own pocket the identical pieces of money which were paid into court. That is not the duty of an involuntary depositary. And we think, under the circumstances, that depositing it with the bankers in his own name, in the absence of any court rule prescribing the mode of its custody, was not a breach of duty, especially as the money was always ready to be paid when called for. Nor can the plaintiff in this

[Aurentz v. Porter.]

case avail himself of the fact that the defendant, when his term of office as prothonotary expired, did not pay over the money to his successor in office. If it was his duty thus to pay over the deposit, the plaintiff has not been injured by his not having done so. Whatever loss the plaintiff sustains, if any, is the result, first, of his own delay in filing the deed, which by the verdict of a jury, and the judgment of the court, he was bound to file, in order to entitle himself to the money paid into court; and secondly, a change in the law making treasury notes a legal tender in payment of debts. For, if the defendant was not under obligation to retain the identical money which at first came into his hands, if he cared for it as a prudent man ordinarily cares for his own money, and if he was ready to pay when the money was legally called for, his liability was that of a debtor, and payment in legal tender notes was a good payment.

Holding these opinions, we affirm the judgment given in the court below. On the facts of the case as they appeared in evidence, the jury was rightly instructed.

Judgment affirmed.